## PETTUS & GLENN vs. WALLACE et al.

1. TAX DEED: *When void.*

    Under the provisions of sec. 118, ch. 148, Gould's Dig., a tax collector was required to sell each tract of land separately, and a tax deed which shows on its face a violation of this provision is void.

2. TAX SALE: *When tender of the taxes, penalty, etc., to the purchaser dispensed with.*

    W. sold and conveyed the land in controversy to G. & Co., who sold and conveyed to the appellants; the latter neglecting to pay the taxes, the land was sold, and a tax deed, void on its face, was executed to G. & Co., as assignees of the tax purchaser. Appellants being out of possession brought suit against W. to recover the land, to which an equitable answer and cross bill was filed, making the appellees, W.'s vendors, parties; the latter also filed a cross bill for the foreclosure of their lien for the unpaid purchase money. Without any motion to dismiss, or other pleading raising the question, it was objected in this court for the first time that the appellees had not filed an affidavit of tender under secs. 7 and 8, ch. 106, Gould's Dig., before commencing this cross suit. *Held,* that under the circumstances the objection was not well taken.

APPEAL from *Phillips* Circuit Court.
Hon. W. H. H. CLAYTON, Circuit Judge.
*Garland*, for appellant.
*Palmer & Sanders, contra.*

ENGLISH, C. J. Thomas F. Pettus and Mary E. Glenn brought an action, on the law side of the Phillips circuit court, against Benjamin F. Wallace, for the N. E. frl. qr. of sec. 2; part of the S. E. qr. of sec. 2, and the N. W. frl. qr. of sec. 1, township 2 S., range 2 E., containing as alleged in the complaint, 490 acres.

Wallace filed an answer containing a number of paragraphs, denying the plaintiffs' alleged title and right of possession, pleading the statute of limitation, and setting up an equitable defense and counterclaim, which may be briefly stated as follows :

That on the 27th of May, 1862, he sold to Richard P. Glenn and Elias R. Carr the lands described in the complaint, and an additional tract, (S. W. qr. sec. 1, T. 2 S., R. 2 E.), making 650 acres, for $27.20 per acre. That for the three tracts described in the complaint, they paid him $13,328, in confederate money, and he executed and delivered to them a deed, which was recorded, but he retained possession of the lands, which he had never surrendered. That the consideration for the sale was illegal, and the deed void; and that plaintiffs pur-chased the lands of Glenn and Carr with knowledge of that fact. That having purchased the additional tract (160 acres) of one Nath. S. Turner, but obtained no deed therefor, he procured Turner to execute to Glenn & Carr a bond to make them a title on payment of the price agreed on, being $27.20 per acre, which they had never paid. He prayed that Glenn & Carr, Turner and plaintiffs be made defendants to his counter-claims, that the deed executed by him to Glenn & Carr for

the three tracts described in the complaint be surrendered and canceled, and that he have a decree for the amount due on the additional tract. After the coming in of the answer of Wallace setting up his equitable defense, and counterclaim, the cause was transferred to the chancery side of the court; and demurrers were interposed to some of the paragraphs of the answer, and ruled out, but no question grows out of them on this appeal.

To the paragraphs of the answer of Wallace, setting up his equitable defense, etc., the plaintiffs replied that they purchased the lands described in their complaint, in good faith, of Glenn & Carr, on the 25th of April, 1866, for $13,475, cash, and took their deed therefor of that date, without any knowledge of the equitable matters set up by Wallace.

Carr answered the counterclaim of Wallace, admitting that he and Glenn purchased the four tracts of land of Wallace in May, 1862, paid for the three tracts described in the original complaint in confederate money, and took his deed therefor, and the title bond of Turner for the additional tract. Avers that Wallace had a crop planted on the lands at the time of the purchase, and it was agreed between the parties that he should remain on the lands until he gathered his crop in the following fall, but that in the meantime respondent and Glenn were to have access thereto, etc. Respondent went east of the Mississippi intending to make arrangements for moving on to the lands the next year, but was prevented by the war from returning until after its close. On his return, he claimed rent of Wallace, but he insisted that the care and protection he had given the place during the war were worth the rent, and it was arranged that he should remain on the lands as a tenant of respondent and Glenn; and they never heard of his setting up any adverse claim to the lands in dispute, until after they sold and conveyed them to Pettus and Glenn. Respondent

had been ready to pay for the additional tract but could get no deed therefor.

Wallace demurred to the reply of plaintiffs, and the answer of Carr to his counterclaim, and the demurrers were overruled.

Nathaniel S. Turner, who was made a defendant to the counterclaim of Wallace and Bart. Y. Turner, who was made a party thereto on his own motion, filed an answer and crossclaim.

They admit that Wallace sold the four tracts of land to Glenn and Carr, and that they paid him in confederate money for the three tracts described in the original complaint, and took his deed therefor, as alleged.

But they aver that they, as executors of Edmond Turner, deceased, sold the four tracts of land to Wallace, under an order of the probate court of Phillips county, about the 1st of January 1860, for $12.75 per acre. That he paid them one-third of the purchase money 1st of March following, and was to pay them one-third 1st March 1861, and the remaining third, 1st March 1862, but had made but the one payment, and that the other two-thirds of the purchase money, being $2,762.50 each, with interest from the time they severally matured, remained due and unpaid. That Wallace was let into possession of the lands at the time he so purchased them, and remained in possession until the 9th of January 1872, when he surrendered possession of three-fourths of the lands to Nathaniel S. Turner, for himself and Bart. Y. Turner, and Palmer & Saunders, their attorneys in this case, and that Nathaniel S. Turner was still in the actual possession of three-fourths of the lands, by metes and bounds, as agreed between him and Wallace. That they (the Turners) never made Wallace a deed or title bond for any part of the lands, or took his notes for the unpaid purchase money, nor was

there any written contract of sale between them. They admit that when Wallace sold the lands to Glenn and Carr, being an entire sale of the four tracts, making 650 acres, Nathaniel S. Turner became a party to the contract, so far as to execute a bond to make them a title to the S. W. qr. of sec. 1, on payment of the purchase money, as alleged by Wallace; and that they (the Turners) would have made Glenn and Carr a title to this tract, if they had paid the purchase money; but they would not do so because they could not pay it in confederate money.

That the three tracts conveyed by Wallace to Glenn and Carr embraced all the improvements, and were the most valuable of the lands; and that the original plaintiffs were not innocent purchasers, etc.

They make the original plaintiffs, and Wallace and Glenn & Carr defendants to their crossclaim, and pray a decree for the balance of purchase money, with interest due to them from Wallace, and for satisfaction by sale of the lands.

It appears from the exhibits made part of the crossclaim of the Turners, that Edmond Turner, by his will, appointed his sons, Nathaniel S., and Bart. Y. Turner, the crossclaimants, his executors, and directed them to sell his lands for one-third cash, and the remaining two-thirds on a credit of one and two years, without interest. That by an order of the probate court of Phillips county, where the will was probated, made upon the petition of the executors, they were directed to sell the four tracts of land in controversy in this suit, at public sale, on the 28th November 1859, on the terms indicated in the will, to pay debts of the estate. That the executors made a written report to the court, in which they stated that they had accordingly offered the lands at public sale, and no one offering what was deemed their fair value, they bid them off for the benefit of the estate; and that they had afterward sold

them at private sale to Wallace for $12.75 per acre, one-third in cash, March 1, 1860, and the remainder on a credit of one and two years, without interest; and they prayed that the sale be confirmed, and they authorized to make a deed, etc.   On the 25th January 1860, the probate court approved and confirmed the report of the sale, and ordered it spread upon its record.

Glenn & Carr filed an answer to the crossclaim of the Turners.   They admit that Wallace purchased the lands of the Turners, at the price and upon the terms stated in their pleading; but they deny that he had only paid them one-third of the purchase money as alleged.   On the contrary, they aver that when they purchased the lands of Wallace, they paid him for the three tracts described in the original complaint, $13,328 in confederate money, in the presence of Nathaniel S. Turner, who then and there received from Wallace the balance due from him to the Turners on said lands, and delivered to him a deed therefor, and executed to respondents a title bond for the additional tract; and that Wallace then executed to them a deed for the three tracts described in the original complaint.   After they purchased the lands of Wallace, he remained in possession as their tenant etc., but they knew nothing of his surrendering possession of three-fourths of the lands to the Turners, etc.

They aver that on the 9th of March 1868, said lands (the three tracts described in the original complaint) were sold for the nonpayment of the taxes assessed thereon, for the year 1867, and were purchased by James C. Tappan, who afterwards assigned the certificate of purchase to them, in good faith, for a valuable consideration; and the said lands not having been redeemed, they procured from the clerk of the county court of Phillips county a deed therefor, on the 17th October 1872, which is made an exhibit.   That although

Wallace, in the years 1866 and 1867 acknowledged that he held said lands as their tenant, yet he refused to pay rent, and before said tax sale, and ever since, had claimed to hold said lands adversely to them and to original plaintiffs, and so they say if the sale made by Wallace to them was void, they acquired a good and valid title to said lands under said sale for taxes, as they had never received any of the rents and profits arising from said lands ; which title enured to the benefit of plaintiffs in the original suit under the conveyance made by respondents to them.

The substance of the tax deed, made an exhibit to this answer, will be stated below.

By consent of parties, the answer of Glenn & Carr to the crossclaim of the Turners, was taken as the answer of the original plaintiffs. The Turners demurred to the answers, on the ground, amongst others, that the tax deed was void upon its face, and the court overruled the demurrer.

Wallace filed an answer to the crossclaim of the Turners, admitting that he purchased the lands of them, paid them one-third of the purchase money, and that the other two-thirds remained unpaid, for which he had given them no note, and that they had executed to him no bond for title or deed to any of the lands. That he was let into possession of the lands January 1, 1860, and had continued in uninterrupted possession thereof until the 9th of January, 1872, when he surrendered the possession of three-fourths of the lands to Nathaniel S. Turner, in the manner and for the purposes stated in the crossclaim of the Turners, and that the legal title to all of the lands was still in them under the will of their father. In other words, he admitted to be true the allegations of their crossclaim.

The deposition of Bart. Y. Turner was taken. He stated in substance, that Wallace had made no payment upon the

lands, but the cash payment of $2,762. 50, and that there still remained due to him, and his coexecutor, from Wallace for balance of purchase money, $5,525, without calculating the the interest due thereon.

That neither deponent, nor his coexecutor had ever made Wallace a deed to any part of the lands. Deponent was present at the tax sale, and was acting as sheriff. When he reached the lands described in the tax deed, he told General J. C. Tappan that he did not want the lands to sell; that he was interested in them. Tappan replied that he had a claim on the lands, and desired to protect his interest; and from this deponent inferred that he would not take a tax title, and did not bid on the lands. Tappan was the purchaser at the sale. He did not know who paid the taxes on the lands for the years 1866 and 1868; but it was his impression that Tappan and Hornor were the agents of the original plaintiffs in this suit, for the taxes of 1868. The tax sale occurred March 9, 1868, at the court house in Helena, and he mentions the names of a number of persons who were present when he made the sale.

The court found, on the hearing, that the lands in controversy were sold by Wallace to Glenn & Carr, and paid for in confederate money; that Wallace made them a deed, which was recorded, but never delivered to them possession of the lands. That Glenn & Carr conveyed the lands to the original plaintiffs (Pettus and Mrs. Glenn), but that they had never been in possession thereof. That Wallace never had any deed to the lands. That it appeared from the pleadings and evidence that on the 1st of January, 1860, the Turners sold the lands described in the original complaint, and the additional tract, above described, to Wallace for $12.75 per acre, who paid in cash, March 1, 1860, one-third of the purchase money, and agreed to pay the remainder one and two years

thereafter, with six per cent. interest; that said second and third payments, amounting to the sum $2,762.50 each, were still unpaid, and were a lien upon all the lands; and that the tax title sought to be set up against said lands [three of the tracts] by said original plaintiffs and Glenn & Carr, as shown by the deed, was void, etc.    The court then proceeded to render a decree in favor of the Turners, for $9,445.55, which was declared to be a lien upon all of the lands, and directed a sale of the lands for the satisfaction thereof.

The decree was rendered 2d July, 1873.    The original plaintiffs appealed from the decree.

I. The matters in controversy between appellants and Wallace, the original parties, and between Wallace and Glenn & Carr and appellants, on the counterclaim of Wallace, etc., were overriden by the crossclaim of the Turners for purchase money, etc., and the first question to be decided on this appeal is, whether the tax deed set up to defeat their claim is valid, or void on its face.

The appellees (the Turners) insist that the tax deed is void, because it shows upon its face that the three tracts of land were sold en masse for the taxes, etc., charged upon them, instead of by separate tracts.    The deed recites that "the N. E. qr. of frl. section 2, part of the S. E. qr. of section 2, and the N. W. qr. of frl. section 1, in T. 2 S., R. 2. E., containing 490 acres, lying in the county of Phillips, etc., were listed and assessed for taxes, etc., in the names of Pettus & Glenn, who were nonresidents of the county, agreeably to the laws of the state, etc., for the year 1867," etc.    That the lands were returned on the delinquent list, with the penalty added, etc., etc.    That neither the owners thereof, nor any person for them, having paid the state, school, and county taxes assessed thereon, amounting to the sum of $29.40, due on said lands for the year 1867, etc., and there being no personal estate of said

Pettus & Glenn vs. Wallace et al.

Pettus & Glenn, known to the collector, whereof to levy and make distress, etc., W. L. Martin, the collector of said county, etc., did proceed to advertise and give at least four weeks previous notice, according to law, etc., that he would sell at public auction, on Monday the 9th day of March, 1868, at the court house, etc., said lands, etc., or so much thereof as would be sufficient to pay said taxes, together with the penalty, costs and charges due thereon for the year 1867, etc.

"That on the 9th day of March, 1868, the said taxes, penalty and costs on said tracts of land still remaining unpaid, the said W. L. Martin, collector as aforesaid, did proceed to sell at public auction at the court-house door, etc., the said tracts of land, or so much thereof as would be sufficient to pay the taxes, penalty, and costs due thereon as aforesaid. Whereupon, James C. Tappan bid and offered to pay the taxes, penalty and costs due on said tracts of land for the whole thereof, and no other person bidding or offering to pay the same for a less quantity, the same was struck off to the said James C. Tappan; which said state, school, and county taxes, with the penalty and costs thereon, did amount to the sum of $42.50, and the said James C. Tappan having paid to said W. L. Martin, collector as aforesaid, the sum of $42.50, the receipt whereof is hereby acknowledged, and the term of twelve months having expired since the day of sale, and the said lands being unredeemed, and there being now produced to me, clerk of said county, the certificate granted by the collector, etc., to said James C. Tappan, etc, which was assigned to Richard P. Glenn and Elias R. Carr, by the said Tappan, for a valuable consideration, and the said Glenn & Carr requiring of me a deed," etc.

The clerk then proceeds to convey the lands, for the said consideration of $42.50, so received by said collector, etc., to Glenn & Carr.

There can be no doubt, from the recitals of the deed, that the collector offered for sale, and Tappan purchased, the three tracts of lands *en masse*, for the aggregate amount of taxes, penalty, and costs charged upon them, instead of offering and selling the tracts separately for the taxes, etc., properly chargeable upon each.

By the statutes in force when the lands in controversy were assessed and sold, the owner was required to give a description of all his lands, by township, range, section, quarter section, tract, lot, or part thereof, and the number of acres in each particular tract or subdivision thereof.    Gould's Dig., ch. 148 sec. 14; and each tract or town lot had to be valued separately, etc.  Id., 16.   The sheriff was required to make similar lists of the lands of nonresidents failing to furnish lists, by the best means in his power.   Id., secs. 23, 25, 29, etc.

The collector was required to offer for sale, separately, each tract of land and town lot contained in such list, and on which the taxes and penalties had not been paid.   Id., sec. 118, etc.

The person offering to pay the taxes and penalties charged on any tract or lot, for the least quantity thereof, was to be the purchaser thereof.   Id., sec. 119, etc.

In the case before us, three tracts, two of them in section two, and the other in section one, were offered and sold *en masse*, for the amount of taxes, penalty, etc., assessed upon all three of them.

Such sale was illegal, and the tax deed void.   *Walker v. Moore*, 2 Dill., 256; *Ferguson v. Heath*, 21 Iowa, 439; *Byam v. Cook*, id., 392; *Harper v. Sexton*, 22 Iowa, 442; *Ackley v. Sexton*, 24 id., 320; *Boardman v. Bourne*, 20 id. 134; Blackwell on Tax titles, p. 330; *Wallingford v. Fiske*, 24 Me., 390; *Willey v. Scoville's Lessee*, 9 Ohio, 42; *Morton v. Harris*, 9 Watts, 319; *Bonnell v. Roane*, 20 Ark., 125; *Biscoe et al v. Coulter et al.* 18 Ark., 435.

II. It is objected for the appellants that the Turners did not file in the office of the clerk of the court below, an affidavit that they had tendered to the tax purchaser, or his assignee, etc., the amount of taxes, penalty, etc., paid for the lands at the tax sale, with the premium thereon, etc., as required by secs. 7, 8, ch. 106, Gould's Dig., p. 750.

As to this objection, it may be remarked :

*First.* That the Turners did not commence this suit for the possession of the lands in question, but the appellants, who were not in possession, brought the suit against Wallace to recover possession of the lands. The Turners were made defendants to the counterclaim of Wallace, and filed an answer, and set up their crossclaim for purchase money as against Wallace, Glenn & Carr, and the appellants, who claimed title under Wallace, and in their crossclaim the Turners alleged that they were then in possession of three-fourths of the lands by agreement with Wallace, and that he was in possession of the remainder.

In *Chaplin v. Holmes,* 27 Ark., 417, Mr Justice Harrison said : " It will be seen by a reference to the statute, that such an affidavit is required only in actions for the recovery of the land, or for the possession thereof."

*Second.* But if it be conceded that the Turners should have filed with the clerk below such affidavit before, or at the time of filing their crosspleading asserting their claim for unpaid purchase money, how are we to know that it was not done? No motion was made in the court below to dismiss their cross suit for failure to file such an affidavit, as was done in *Craig v. Flanagin et al.* 21 Ark., 319. No plea in abatement was filed setting up such failure, as was done in *Pope et al. v. Macon et al.* 23 id., 644, nor was the objection made in any mode in the court below, but is raised for the first time in this court by the brief of the counsel for the appellants.

*Third.* Pettus and Mrs Glenn are the only appellants. Glenn & Carr, and Wallace, did not appeal from the decree of the court below.   Why should the Turners have tendered to the appellants the taxes, etc., before they commenced their cross-suit?    They were under no obligation to pay the taxes on the lands for the year 1867, unless they had thought proper to do so to preserve their lien for the unpaid purchase money.    They sold the lands to Wallace in 1860, and let him into possession.    Wallace sold them to Glenn & Carr, in 1862, for confederate money, and made them a deed ; and in 1866, they sold and conveyed them, by deed containing statutory covenants of title, to the appellants ; and the lands were assessed for taxes in their names for the year 1867, and it was for these taxes that the lands were sold in March, 1868.  They claimed to be the owners of the lands as against Wallace, and it was their failure to pay the taxes that caused the attempt of the tax collector to sell them.    Had the sale been valid, the tax deed made to their vendors would, perhaps, have enured to their benefit, as they claimed under the covenants of the deed made to them by their vendors, who had not the legal title to the lands when the deed was made, the legal title being in the Turners. Gould's Dig., ch. 37, sec. 4 ; and it may have been with the view of perfecting their title as against the Turners and Wallace, that appellants neglected to pay the taxes of 1867, and permitted the lands to be sold.

Be this as it may, we think that the objection made here, that the Turners did not file the affidavit of tender of taxes, etc., in the clerk's office before commencing their cross-suit, is not, for the reasons above stated, well taken.

The decree of the court below must be affirmed.